HAMITER, Justice.
 

 Acy Demerest, individually and as natural tutor of his two minor children, instituted this suit to recover damages for the death of Mrs. Zona Chatham Demerest (his wife and the mother of such children) that resulted from an automobile collision between a Chevrolet driven by the decedent and a Pontiac operated by one M. L. Blackwell. The defendants are the latter’s liability insurers.
 

 The district judge found negligence on the part of Blackwell, but he dismissed the suit on the ground that decedent was contributorily negligent.
 

 
 *1051
 
 On an appeal the Court of Appeal of the First Circuit affirmed the judgment of dismissal. It, having pretermitted the question of Blackwell’s negligence, was unable to conclude that the district judge manifestly erred in finding Mrs. Demerest contributorily negligent. In this connection the court stated, among other things, that “ * * * while we believe that the record could probably as plaintiff ably urges be construed to support a recovery in favor of plaintiff, we cannot hold that the District Court committed manifest error by holding to the contrary.” See 93 So.2d 259, 263.
 

 On plaintiff’s application we granted a writ of certiorari.
 

 The collision occurred on U. S. Highway 90 within the corporate limits of Mermentau (in Acadia Parish) where, as shown by traffic markers, a maximum speed limit of 25 miles per hour existed. In the vicinity of the scene of the accident the roadway, constructed of concrete with an asphalt top and being approximately 22 feet wide, was straight and unobstructed and coursed generally in an east-west direction. To the south of the highway, some 21 feet away, was a building in which plaintiff and his wife operated a cafe. To the north, almost directly across from the cafe, was a gasoline service station.
 

 About two-thirty o’clock of the morning of March 13, 1954, Mrs. Demerest closed the cafe (she having worked the “night shift”, whereas her husband had been on duty during the preceding daytime hours), and she and two of her waitresses went with an unidentified man in his car to Crowley to take home one of the waitresses. On returning to the cafe about five o’clock the same morning the decedent and a Miss Amy Romero (the remaining waitress) alighted from that car and entered the parked Chevrolet, which belonged to this plaintiff, with the view and purpose of going home. With Mrs. Demerest driving, the Chevrolet then circled a small pump house, located a few feet east and near the rear of the cafe, and proceeded in a northwesterly direction in an attempt to cross the highway. While her vehicle was on the roadway (approximately midway of the cafe), and was passing the center line (the front had reached a point about two feet north of the center stripe), it was violently struck on the left front side (between the front wheel and the driver’s seat) by Blackwell’s Pontiac, then traveling toward the east.
 

 After the impact the Pontiac moved northeasterly some 75 feet and stopped off the highway’s north side. The Chevrolet was knocked easterly a minimum of 90 feet. It came to rest facing in a westerly direction, on the south side of the road, part being in the traffic lane and the remainder on the adjoining shoulder. Both
 
 *1053
 
 Miss Romero and Mrs. Demerest were thrown from the Chevrolet. The latter died almost instantly.
 

 Undoubtedly, Blackwell was guilty of negligence in that he was operating his motor vehicle at a rate of speed that was greatly excessive in view of the existing circumstances. While passing through the incorporated Town of Mermentau on the way to his work, for which apparently he was running late, Blackwell exceeded the municipality’s 25 miles per hour speed limit. According to his own testimony his car was traveling “pretty well in the neighborhood” of 50 miles per hour. And three witnesses testified concerning admissions made by Blackwell to them shortly after the accident (these he denied during the trial) that his speed was 70 or 75 miles per hour.
 

 But counsel for defendants contend that Blackwell cannot be held herein to have violated the Mermentau speed ordinance because (1) no reference was made to it in plaintiff’s petition and (2) it is invalid in view of the provisions of LRS 32:229. Assuming for the sake of argument that this contention has merit, nevertheless we must conclude that under the prevailing conditions Blackwell’s speed — even that most favorable to him of 50 miles per hour — rendered his driving grossly negligent. Thus, the area where the accident occurred was well populated. Behind the cafe stood a rice mill, and seyeral dwelling houses existed on both sides of the filling station. Again, Blackwell at the time was driving during darkness and in an extremely heavy fog. According to the witnesses the fog was so dense that the lights of an oncoming car could be seen no more than 200 to 300 feet away; that at such distance they appeared exceedingly small; and that a car without lights was not observable beyond 50 feet.
 

 The law governing the operation of motor vehicles generally is well stated in F. Strauss and Sons, Inc., v. Childers, La.App., 147 So. 536, 538 (quoted’ with approval in Culpepper v. Leonard Truck Lines, Inc., 208 La. 1084, 24 So.2d 148), as follows: “ * * * A motorist has not the right to assume that his course .of travel is free of danger or obstruction, in the absence of his ability to see clearly ahead. If he does so assume. and continues to travel as though he knew there was perfect clearance ahead, he does so at his own risk and peril.” See also Ledet v. Gottleber, La.App., 143 So. 71; Hobbs v. Employers’ Liability Assurance Corporation, La.App., 188 So. 191 and Odom v. Long, La.App., 26 So.2d 709.
 

 With reference to the particular circumstances' which prevailed here the jurisprudence of this state is that: “ * * * when visibility is materially
 
 *1055
 
 impaired because of smoke, mist, dust, etc., a motorist should reduce his rate of speed to such extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision; and as an extreme measure of safety, it is his duty, when visibility ahead is not possible or greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. * * * ” Hogue v. Akin Truck Line, La.App., 16 So.2d 366, 368. See also Rector v. Allied Van Lines, Inc., La.App., 198 So. 516; Penton v. Sears, Roebuck and Company, La.App., 4 So.2d 547; Bernstein v. Cathey and Carrell Truck Lines, La.App., 32 So.2d 403 and Rachal v. Balthazar, La.App., 32 So.2d 483.
 

 Alternatively, these defendants urge that even though Blackwell was guilty of negligence which proximately caused the accident Mrs. Demerest was contributorily negligent in that she, while in an intoxicated condition, suddenly and at a high rate of speed drove her car from behind a building into the path of the oncoming automobile. The record before us does not justify this conclusion.
 

 While there is some evidence that during the night Mrs. Demerest had taken several drinks of an alcoholic beverage, it does not appear, that she was intoxicated and unable to drive properly. In fact, her companion (Miss Romero) testified that “she didn’t' look drunk to me”. Nor was it shown that decedent drove onto the highway suddenly and at a high rate of speed. Blackwell’s assertion that she so proceeded was obviously a mere assumption on his part. He. testified: “It had to be coming out fast or I would have seen the car. She was bound to be moving pretty fast. * * * The first time I saw the car I hit it; that’s when I saw it. When I saw it it was in the road; that’s when I saw it.”
 

 According to Miss Romero, on the other hand, the decedent drove slowly; the headlights of the Pontiac were visible to her, although they appeared small and distantly; and the oncoming car seemed to be far enough away to permit a safe crossing of the highway. Furthermore, it is noticed that decedent’s automobile, before entering the roadway, traversed the open and clear space of some 21 feet in front of the cafe; and its lights were shining northwesterly or in the general direction of the Pontiac. These circumstances strongly suggest that Blackwell failed to see the Chevrolet before the collision only because he was driving too fast and not keeping a proper lookout.
 

 Contributory negligence is a special defense, and the defendant carries the burden of establishing it by a preponderance of the evidence. Schick v. Jenevein, 145 La. 333, 82 So. 360; Mequet v. Algiers Manufacturing Company, Ltd., 147 La, 364,
 
 *1057
 
 84 So. 904; Burns v. Evans Cooperage, Company, Inc., 208 La. 406, 411, 23 So.2d 165 and Savoie v. Dupuy, 218 La. 717, 50 So.2d 817. In our opinion these defendants have not discharged such burden.
 

 Accordingly, we hold that the sole proximate cause of the instant collision was the gross negligence of Blackwell and that plaintiff is entitled to recover damages herein. However, for the purpose of determining the proper quantum to be awarded we shall remand the cause, in keeping with our practice, to the Court of Appeal. Salter v. Zoder, 216 La. 769, 44 So.2d 862; Savoie v. Dupuy, supra, and Herget v. Saucier, 223 La. 938, 67 So.2d 543.
 

 For the reasons assigned the judgments of the district court and the Court of Appeal are reversed and set aside and the case is remanded to the latter tribunal for further proceedings according to law and consistent with the views herein expressed. Defendants shall pay the costs of this appeal. The assessing of all other costs is to await the final determination of the litigation.
 

 TATE, J. ad hoc, recused.
 

 HAWTHORNE, J., dissents being of the view that the opinion of the Court of Appeal is correct. See 93 So.2d 259.